**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**THE PROVIDENT BANK,**

               **Plaintiff,**

**v.**                                                **Case No. 3:09cv36-MCR/EMT**

**TAYLOR CREEK ENTERPRISES, LLC,
and WILLIAM F. CLAY,**

               **Defendants.**

_____/

# O R D E R

      Plaintiff The Provident Bank ("Provident Bank") has sued Taylor Creek Enterprises, LLC ("Taylor Creek") and William F. Clay ("Clay"), seeking to recover the deficiency balance owing on a defaulted loan and security agreement for the purchase of a vessel. Pending before the court are cross motions for summary judgment filed by Defendant Clay (doc. 24) and Plaintiff Provident Bank (doc. 35), and Provident Bank's motion for summary judgment against Defendant Taylor Creek (doc. 36).  Each side has now responded to the other's motion (docs. 26, 27, 38), and the court has considered all arguments presented. For the reasons discussed below, the court DENIES Clay's motion and GRANTS Provident Bank's motions.

**Background**

      The undisputed facts include the following.[1]  Clay is the sole member of Taylor Creek, a company he formed to own the vessel, M/Y *Dos Locos*, a 61' Viking Sport Fish

---

[1]  Clay's motion for summary judgment fails to comply with this court's local rules requiring that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts to which the moving party contends there is no issue to be tried."  N.D. Fla. Loc. R. 56.1(A). "Failure to file such a statement constitutes grounds for denial of the motion." *Id.*

Convertible.  Clay, who holds a Master's Degree in business, arranged to finance the purchase of the vessel through First Commercial Corporation of America ("First Commercial"), and thereafter on April 24, 2006, executed a Vessel Installment Loan Note and Security Agreement ("loan and security agreement") on behalf of Taylor Creek in the amount of $1,140,000.  On the same day, Clay signed a Continuing Guaranty-Unlimited ("the guaranty").  The guaranty is made out to First Commercial and signed by "William F. Clay, Individual."  The guaranty states that for valuable consideration, and to induce First Commercial to loan money and extend credit, Clay promised to pay "each and every obligation, direct or contingent, now existing or hereafter arising, owing to you by _____, hereinafter called the Borrower."  Clay also executed a first preferred ship mortgage on *Dos Locos* on behalf of Taylor Creek and in favor of First Commercial.  First Commercial then assigned all rights and obligations to Provident Bank.

Taylor Creek defaulted on the loan and security agreement.  On December 8, 2008, Clay advised Provident Bank that he was having financial difficulties and intended to sell the *Dos Locos*.  He sold the vessel on December 23, 2008, for a loss at a price of $855,000.  Provident Bank applied the sale proceeds to the debt and elected to accelerate payment of the balance due, as permitted under the terms of the first preferred ship mortgage.  As of February 16, 2009, the balance owing was $220,039.37, plus interest accruing at the per diem rate of $34.83.[2]  Provident Bank's amended complaint (doc. 20) seeks judgment in this amount from Taylor Creek on the loan and security agreement and seeks judgment from Clay for this amount on the basis of his personal guaranty.  In his answer, Clay admits liability on the part of Taylor Creek but denies personal liability on the guaranty, pleading the statute of frauds as an affirmative defense.

Clay moved for summary judgment on his statute of frauds affirmative defense. Provident Bank opposed the motion and also moved for summary judgment against both Clay and Taylor Creek.  In support, Provident Bank offers Clay's deposition testimony, in which Clay admitted that he signed this guarantee as an individual and understood the

---

[2] The security agreement and the mortgage also provide for the collection of reasonable attorney's fees and costs.

difference between signing as an individual or in a representative capacity.  Clay testified he understood that "the Borrower" on the guaranty was Taylor Creek and that the obligation referenced was the amount of Taylor Creek's loan financing the purchase of the *Dos Locos* in the amount of $1,140,000.  Clay admitted that neither he nor Taylor Creek had any other dealings or business with First Commercial aside from arranging financing for Taylor Creek's purchase of the vessel *Dos Locos*.  Although Clay initially claimed he did not know what he was signing, he later admitted he signed the guaranty "[b]ecause it was part of the paperwork package that had to be signed" for Taylor Creek to obtain the loan.[3]  (Doc. 26-1, at 24.)  Provident Bank also submitted the affidavit of Donald E. Schrama, president of First Commercial, stating that it is the company's standard business practice to send the loan and security agreement and guaranty together in a package to the prospective borrower and guarantor.  Clay offered no evidence either in support of his motion or in opposition to Provident Bank's motion.

**Discussion**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  If satisfied, the burden shifts to the nonmovant to produce "specific facts showing there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted).  The movant is entitled to summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[3]  The questioning continued, "So there was actually a paperwork package that was presented to you that contained the vessel - - " Answer, "Yes, we've just gone over some of it."  Question, "Okay.  But was this a package that was presented to you all at one time?"  Answer, "I do not recall."  (Doc. 26-1, at 24.)  The documents, however, reveal that both the loan and security agreement and the guaranty bear a date of April 24, 2006.

of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23 (noting a complete failure of proof on an essential element of the claim renders all other facts immaterial).

Clay argues that the guaranty is unenforceable under Florida's statute of frauds because it is missing essential terms, including the identity of "the Borrower" and the amount of the obligation or liability guaranteed. Clay also asserts that it is inappropriate to consider other documents to supply the missing terms because parol evidence is inadmissible to cure an obvious or patent ambiguity. Provident Bank asserts that the guaranty is enforceable, arguing that the related documents may be aggregated in this instance to supply the essential terms and that at most, only a latent ambiguity exists in the guaranty, permitting the consideration of parol evidence which clearly demonstrates that Clay is liable on the guaranty.

The statute of frauds provides that no action shall be brought on the promise to pay the debt of another, which was not to be discharged within one year, unless the agreement or promise is "in writing and signed by the party to be charged." Fla. Stat. § 725.01. The writing must also contain the essential terms of the transaction, but several writings may be aggregated to satisfy the statute, even if only one of the documents is signed. *See de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 681 & n.2 (Fla. 1st DCA 2007); *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. 3d DCA 1999); *First Guaranty Corp. v. Palmer Bank & Trust Co.*, 405 So. 2d 186, 188 (Fla. 2d DCA 1981). "All that the statute requires is written evidence from which the whole contract may be made out." *Kolski*, 731 So. 2d at 171. Documents may be aggregated to this purpose provided the signed document expressly or implicitly refers to the others. *Id.*; *First Guaranty Corp.*, 405 So. 2d at 188. Such "'[a]n implied reference may be established by either the fact that the documents relate to the same subject matter or by physical annexation.'" *Kolski*, 731 So. 2d at 172 (quoting *First Guaranty Corp.*, 405 So. 2d at 188). Further, in appropriate circumstances, parol evidence may be admitted to clarify the writing.[4] *First Guaranty*

---

[4] For example, in *Kolski*, the court held it was proper to consider a reference in a will together with some canceled checks as sufficient to take an oral agreement out of the statute of frauds, 731 So. 2d at 172, but it has also been held that it is not proper to consider parol evidence to supply the essential terms for a

*Corp.*, 405 So. 2d at 188; *Kolski*, 731 So. 2d at 172.  For the following reasons, the court concludes that it is appropriate in this case to consider both the related documents and the proffered parol evidence.

First, under the statute of frauds, even an implicit or implied reference to other documents permits the court to consider them in the aggregate for purposes of meeting the statute.  *See Kolski*, 731 So. 2d at 171-72; *First Guaranty Corp.*, 405 So. 2d at 188.  The guaranty specifically references an obligation owing to First Commercial and indicates a clear intent – as shown by Clay's signature – to individually guaranty the borrower's obligation to First Commercial in order to induce First Commercial to make a loan to the borrower.  The guaranty bears the same date as Clay's signature, in his representative capacity, on Taylor Creek's loan and security agreement with First Commercial for the purchase of *Dos Locos*.  It is reasonable and permissible in this circumstance to aggregate these related documents to supply the missing terms of the guaranty.

Clay argues it is inappropriate to aggregate the documents or consider the parol evidence because of a patent ambiguity on the face of the guaranty, citing *First Guaranty Corp.*, 405 So. 2d at 188-89.  In that case, the court held, for several reasons, that an unsigned note and mortgage on real property together with five guaranty documents, some signed and some unsigned, did not satisfy the statute of frauds, but that case is distinguishable.  There was conflicting evidence in *First Guaranty Corp.* concerning the purpose of the several agreements and whether they were related documents; for instance, one party contended the guarantys applied to the unsigned loan and mortgage on real property and the other side contended the guarantys were intended to secure a construction loan, unrelated to the note and mortgage.  *See id.* at 189.  No such conflicting purpose is evidenced here.  Also, one guaranty in the *First Guaranty Corp.* case, while signed by the appellant, consisted of a form signed in blank, and the court held that this defect could not be cured by parol evidence because to supply the missing information

---

contract to purchase and sell land, *see de Vaux*, 953 So. 2d at 681 & n.2 (noting that although an enforceable contract for the purchase of real estate requires the essential elements to be embodied in the writing, several writings may be aggregated to satisfy the statute of frauds).

would require the court to rewrite the contract for the parties. *Id.* These facts are far removed from the facts at hand. The guaranty form here was not signed in blank – it identified an obligation owing specifically to First Commercial and it bore an identical date of transaction as the note and security agreement. This implicit reference is a sufficient basis on which to aggregate the documents. Doing so eliminates any possibility of ambiguity and adequately supplies all essential terms of the agreement in writing, thus satisfying the statute of frauds. Clay's statute of frauds affirmative defense therefore fails, and his motion for summary judgment will be denied.

Second, for purposes of Provident Bank's summary judgment motion on the merits, "[i]t is well established that in construing a contract the leading object is to ascertain and effectuate the intent of the parties." *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 547 (Fla. 1st DCA 1973). Where, as here, the loan and security agreement and the guaranty "appear[] to be co-related parts of one general transaction, they may all be considered in arriving at the intention of the parties." *Jackson v. Parker*, 15 So. 2d 451, 459 (Fla. 1943). "Parol evidence is admissible to connect several written instruments and show that they were all parts of one transaction." *Id.* at 460. Also, where it appears that a particular element of an agreement or an "extrinsic negotiation" is not dealt with in the writing, "it is presumed that the writing or writings do not represent all of the transaction on that element, and parol evidence in proof of such element is admissible." *Id.* Parol evidence may not be used to vary or contradict the terms of an agreement, but it may be admitted to clarify the terms used and show the true intent of the parties. *Bd. of Trustees of the Internal Improvement Trust Fund v. Lost Tree Village Corp.*, 805 So. 2d 22, 26 (Fla. 4th DCA 2001).

The express terms of the guaranty in this case do not define the identity of the borrower or the amount of the obligation owed, but, as noted above, the guaranty's express language permits the related loan and security agreement to supply the missing terms. The guaranty references an obligation of the borrower owing to First Commercial, a purpose of inducing First Commercial to make a loan, a signature by Clay affirming his consent to become an individual guarantor of that obligation, and a date identical to the

loan and security agreement.  These references indicate clearly that other documents are necessary to interpret the parties' intent and that a relation exists between these particular documents.  Considering them as co-related parts of one general transaction renders plain all essential terms and the intent of the parties.

Additionally, even if it were not clear from the documents themselves that they are related, it is appropriate to consider the parol evidence for the purpose of determining whether the documents are connected or related.[5]  *See Jackson*, 15 So. 2d at 459-60. Clay testified that he signed the guaranty in his individual capacity as stated on the guaranty, he understood the borrower was Taylor Creek, and he understood that the loan for *Dos Locos* was the amount of the obligation referenced in the guaranty.   Clay acknowledged in his deposition that he signed the guaranty because it was part of the package of papers necessary to obtaining the loan for the vessel and it was First Commercial's general business practice to send such documents together for signing. Finally, Clay testified that neither he nor Taylor Creek had any other business relations with First Commercial to which the guaranty could have related.  Thus, to the extent there may be any uncertainty regarding whether these documents are related, the parol evidence sufficiently connects them as part of one general transaction, and again, the terms of the related documents considered together supply all essential terms and render the guaranty unambiguous.[6]  Clay presents no evidence to refute these facts.

_____

[5] The parol evidence in this case is not offered to contradict any terms in the written agreements or to create any new term; instead, it demonstrates only that the documents are co-related parts of one transaction.  *See Jackson*, 15 So. 2d at 457, 459-60.

[6] Because the court construes the documents together and thereby finds no ambiguity, it is not necessary to resolve the parties' arguments concerning whether the guaranty contains either a patent or latent ambiguity.  Where an ambiguity is found, "Florida courts have adhered to the distinction between patent and latent ambiguities and ordinarily allow parol evidence where there is a latent ambiguity and reject it where there is a patent ambiguity."  *Metro Dev. Group, L.L.C. v. 3D-C & C, Inc.*, 941 So. 2d 11, 13 (Fla. 2d DCA 2006) (internal marks omitted).  *But see generally Bajrangi v. Magnethel Enter., Inc.*, 589 So. 2d 416, 419 n.5 (Fla. 5th DCA 1991) ("The distinction between latent and patent ambiguities in relation to parol evidence appears to be disappearing."); *Crown Mgm't Corp. v. Goodman*, 452 So.2d 49, 51-52 (Fla. 2d DCA 1984) (indicating Florida courts have adhered to this distinction but commenting that "the growing and better reasoned trend of authority indicates that the introduction of parol evidence to probe the true intent of the parties is proper, irrespective of any technical classification of the type of ambiguity present").  "A patent ambiguity is one that appears on its face," and a latent ambiguity arises where the language is clear and

The documents demonstrate that Clay is individually liable on the guaranty for Taylor Creek's obligation to First Commercial, which has been assigned to Provident Bank. Taylor Creek admits liability for the deficiency balance that remains due and owing on that obligation and does not oppose summary judgment. There are no disputed issues of material fact, and Provident Bank is entitled to judgment as a matter of law against the defendants.

**Conclusion**

Accordingly, it is hereby ORDERED:

1.      Defendant William F. Clay's motion for summary judgment against The Provident Bank (doc. 24) is DENIED.

2.      Plaintiff's motion for summary judgment against Defendant William F. Clay (doc. 35) is GRANTED.

3.      Plaintiff's motion for summary judgment against Defendant Taylor Creek Enterprises, LLC (doc. 36) is GRANTED.

4.      The clerk is directed to tax reasonable attorneys' fees and costs against the defendants.

**DONE AND ORDERED** this 19th day of January, 2010.


_s/ M. Casey Rodgers_

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

intelligible but some extrinsic fact creates a necessity for interpretation or a choice among two or more possible meanings. *Saenz v. Campos*, 967 So. 2d 1114, 1117 (Fla. 4th DCA 2007). A third category, referred to as an intermediate ambiguity is treated as a latent ambiguity where the words used are sensible and have a settled meaning but at the same time could admit of two interpretations. *Ace Elec. Supply Co.*, 288 So. 2d at 547. Where there is a latent ambiguity, the issue of the correct interpretation of the agreement is an issue of fact. *Mac-Gray Servs. Inc. v. Savannah Assocs. of Sarasota, LLC*, 915 So. 2d 657, 659 (Fla. 2d DCA 2005). Here, the documents themselves and the uncontradicted parol evidence indicate that the guaranty and the loan and security agreement are co-related parts of a whole transaction. Considering them together, there is no ambiguity in the guaranty and no outstanding question of fact.

Case No. 3:09cv36-MCR/EMT